**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| JOHN WAGNER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     Case No. CIV-16-154-CG |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant.[1] | ) |

## OPINION AND ORDER

Plaintiff John Wagner brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. The parties have consented to the jurisdiction of a United States Magistrate Judge. Doc. No. 16. The Commissioner has answered and filed the administrative record (Doc. No. 11, hereinafter "R.__").[2] The parties have briefed their positions and the case is now ready for decision. For the reasons set forth below, the Court affirms the Commissioner's decision.

---

[1] Per Federal Rule of Civil Procedure 25(d), Acting Commissioner Nancy A. Berryhill is substituted as the successor public-officer defendant in this case.

[2] With the exception of the administrative record, references to the parties' filings use the page numbers assigned by the Court's electronic filing system.

## PROCEDURAL HISTORY

Plaintiff protectively filed his application for SSI on November 7, 2012, initially alleging a disability onset date of December 24, 2011, but later amending the date to November 7, 2012.  R. 30-31, 150-55, 164-66.  Following denial of his application initially and on reconsideration, an Administrative Law Judge ("ALJ") held a hearing.  R. 26-58, 61-90.  The ALJ issued an unfavorable decision on August 29, 2014.  R. 11-25. The SSA Appeals Council denied Plaintiff's request for review, making the ALJ's unfavorable decision the final decision of the Commissioner.  R. 1-6; *see also* 20 C.F.R. § 416.1481.  Plaintiff then filed this action for judicial review.

## ADMINISTRATIVE DECISION

As relevant here, a person is "disabled" within the meaning of the Social Security Act if he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  The Commissioner uses a five-step sequential evaluation process to determine entitlement to disability benefits.  *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. § 416.920.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 7, 2012, the application date.  R. 13.  At step two, the ALJ determined that Plaintiff had the following severe impairments: "shortness of breath; depression; anxiety; diabetes; hypertension; sleep apnea; substance abuse; [gastroesophageal reflux disease]; rheumatoid arthritis (knees); and chronic pain in the

back, hands, and fingers." R. 13. At step three, the ALJ determined that Plaintiff's impairments did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 13-15.

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on all of his medically determinable impairments. R. 15-19. The ALJ found that Plaintiff has the RFC to perform light work, specifying that Plaintiff is able to "lift and or carry 20 pounds; stand and/or walk 6 hours in an 8-hour workday; and sit 6 hours in an 8-hour workday all with normal breaks." R. 15; *see* 20 C.F.R. § 416.967(b) (defining "light" work). The ALJ assessed the following additional limitations:

> [Plaintiff] can occasionally climb, bend, stoop, squat, kneel, crouch, crawl, push/pull, operate foot controls, and reach overhead. He has a slight limitation with finger and grip (between frequent and constant). He should avoid dusts, fumes, gases, unprotected heights, fast and dangerous machinery, rough and uneven surfaces, and cold damp and damp work environment. He should have easy access to restroom (onsite and easily available). Due to depression, anxiety, and substance abuse, the work should be simple, repetitive, and routine. He should have limited contact with the public (contact with the public should be brief, cursory and incidental). He has a slight limitation in contact with co-workers (contact should be brief and cursory) and supervisors (no restrictions of ordinary supervision). The claimant is afflicted with symptomatology from a variety of sources that produces mild to moderate chronic pain, this will be of sufficient severity as to be noticeable to him at all times; but nonetheless, he would be able to remain attentive and responsive in a work setting, and could carry out normal work assignments satisfactorily. The claimant takes medication for relief of his symptomatology; the medication will not preclude [work] at the sedentary and the light level as restricted and the claimant would remain reasonably alert to perform required functions by his work setting. The claimant[,] while functioning at the sedentary and light levels as restricted, would find it necessary to change position from time to time to relieve his symptomatology.

R. 15.

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work and that transferability of job skills was not a material issue. R. 19. At step five, the ALJ considered whether there are jobs existing in significant numbers in the national economy that Plaintiff—in view of his age, education, work experience, and RFC—could perform. Taking into consideration the testimony of a vocational expert ("VE") regarding the degree of erosion to the unskilled light occupational base that is caused by Plaintiff's additional limitations, the ALJ concluded that Plaintiff could perform occupations such as marking clerk, hotel or housekeeper cleaner, routing clerk, and document preparer, all of which offer jobs that exist in significant numbers in the national economy. R. 20-21. On this basis, the ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from November 7, 2012, through the date of the decision. R. 21.

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s]

the record as a whole," including any evidence "that may undercut or detract from the ALJ's findings," "to determine if the substantiality test has been met." *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). While a reviewing court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

## ISSUES ON APPEAL

Plaintiff contends that the ALJ improperly evaluated the medical evidence, alleging that the ALJ did not properly consider the opinions of Plaintiff's treating physicians. Pl.'s Br. (Doc. No. 15) at 14-19. Plaintiff further alleges that the ALJ failed to evaluate Plaintiff's subjective complaints under the correct legal standards. *Id.* at 19-22.

## ANALYSIS

### A. Medical evidence

#### 1. Physical Impairments: Opinions of Dr. Cao and Dr. Roberts

The record includes treatment notes from treating physician Hiep Cao, MD, through April 2014 as well as a Physical Medical Source Statement dated April 2, 2014. *See* R. 371-418, 419-22, 423-31. The record also includes the January 28, 2013 report of reviewing consultant Suzanne Roberts, MD. R. 68-69.

Dr. Roberts reviewed Plaintiff's medical record, including the 2011 and 2012 treatment records of Dr. Cao. *See* R. 68. Dr. Roberts assessed a physical RFC for light exertion work. R. 68-69; *see also* R. 16. The ALJ gave Dr. Roberts' opinion "great

weight," stating that "it appears consistent with the totality of medical evidence of record." R. 16.

Dr. Cao, in his April 2014 Physician Medical Source Statement, assessed greater limitations than those found by Dr. Roberts. *Compare* R. 419-22, *with* R. 68-69. The ALJ considered Dr. Cao's opinion and "afford[ed] it little weight," stating:

> [T]he severity presented by Dr. Cao is not supported by the totality of medical evidence of record, specifically treatment records from Exhibit 8F [Dr. Cao's treatment records dated 10/2/12 through 3/18/14] (discussed above), which are internally not supportive of Dr. Cao's Medical Source statement. All of the examinations performed by Dr. Cao at Exhibit 8F show range of motion intact, moving all extremities and . . . normal gait. Furthermore the claimant "has been doing well with the current medications." Lastly, there is no objective medical evidence to support Dr. Cao's opinion.

R. 17.

### a. *Dr. Cao's opinion*

Plaintiff asserts that the opinion of Dr. Cao (Plaintiff's treating physician) was entitled to more weight than the opinion of Dr. Roberts (a nonexamining agency consultant). In evaluating a treating physician's opinion, "the ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). First, the ALJ must consider whether the opinion is entitled to controlling weight. That requires finding the opinion is both "well-supported by medically acceptable clinical or laboratory diagnostic techniques" and "not inconsistent with other substantial evidence in the record." *Id.* Second, if the opinion is not entitled to controlling weight, the ALJ must "make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good

reasons, tied to the factors specified in [20 C.F.R. § 416.927][3] for this particular purpose, for the weight assigned." *Id.*

Plaintiff is correct that a treating physician's opinion is presumed to be entitled to controlling weight so long as it is well-supported and consistent with the record. Pl.'s Br. at 15; *see Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). But "[m]edical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence." *Pisciotta v. Astrue*, 500 F.3d 1074, 1078 (10th Cir. 2007) (internal quotation marks omitted). Here, the ALJ determined Dr. Cao's opinion was entitled to "little weight" for specific reasons. The ALJ noted that the limitations set forth by Dr. Cao were not supported by "the totality of medical evidence of record," including Dr. Cao's own treatment records, and specifically by no objective medical findings. *See* R. 17; *see also* 20 C.F.R. § 416.927(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."); .927(c)(4) ("[T]he more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). Additionally, the ALJ

---

[3] Those factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (internal quotation marks omitted); *see also* 20 C.F.R. § 416.927(c).

stated that Dr. Cao's treatment records showed intact range of motion, ability to move all extremities, and a normal gait, as well as that Plaintiff had been doing well with medication. R. 17; *cf. Hamlin v. Barnhart*, 365 F. 3d 1208, 1217 (10th Cir. 2004) (indicating that the ALJ should "specifically highlight" portions of the record that were inconsistent with treating physician's opinion); *Hackett v. Barnhart*, 395 F.3d 1168, 1174 (10th Cir. 2005) (stating that ALJ properly rejected treating physician's opinion because, among other things, the opinion was "not supported by [the physician's] own records which indicate[d] improvement and stabilization on medications"). These are legitimate reasons for discounting Dr. Cao's opinion, supported by substantial evidence. *See* R. 371-418, 423-31; *Bales v. Colvin*, 576 F. App'x 792, 796 (10th Cir. 2014) (upholding ALJ's decision to give treating physician opinion limited weight when ALJ provided adequate reasons for the decision).

Plaintiff does not contest the reasons given by the ALJ; he does not point to treatment records from Dr. Cao that are consistent with the restrictions set forth in the Medical Source Statement and he does not point to objective medical evidence that supports Dr. Cao's restrictions. *See* Pl.'s Br. at 17. Instead, Plaintiff argues that the ALJ "failed to consider Dr. Cao completed his [Medical Source Statement] over a year after Dr. Roberts completed her RFC opinions" and "Dr. Roberts did not have the opportunity to review Dr. Cao's opinions before she issued her opinion." *Id.* Plaintiff further argues that "[w]hen there is an inconsistency between a treating physician's opinion and the opinions of a nontreating, nonexamining physician, the ALJ must examine the other physician's opinions to determine if they outweigh the treating physician's opinions, 'not

the other way around.'" *Id.* (quoting *Hamlin*, 365 F.3d at 1215).  Plaintiff thus implies that the ALJ erred because he gave Dr. Cao's opinion little weight due to its inconsistency with Dr. Roberts' opinion.  However, that is not the case—the inconsistency cited by the ALJ was with Dr. Cao's own treatment records, as well as the overall lack of supportive objective medical evidence.  The Court finds no reversible error in the ALJ's consideration of Dr. Cao's opinion.

    *b.  Dr. Roberts' opinion*

Plaintiff also challenges the ALJ's evaluation of Dr. Roberts' opinion, arguing that the opinions of nonexamining consultants "are entitled to the least weight compared to the opinions of treating or examining physicians."  Pl.'s Br. at 16.  Plaintiff contends that an ALJ "can only rely on the opinions from State agency medical . . . consultants if their opinions have adequate support from the medical evidence."  *Id.* at 16-17 (citing *Lee v. Barnhart*, 117 F. App'x 674, 678 (10th Cir. 2004); SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996)).

The ALJ determined that Dr. Roberts' RFC determination was consistent with Plaintiff's medical records, with the exception of Dr. Cao's Medical Source Statement, and addressed that difference in opinion.  Plaintiff does not point to any other evidence in the record to argue that Dr. Roberts' opinion did not have adequate support.  Instead, Plaintiff argues that the ALJ "incorrectly presumed Dr. Roberts' opinions were entitled to more weight than Dr. Cao['s opinion]."  Pl.'s Br. at 16 (citing R. 16-17).  The ALJ, however, did not "presume" that Dr. Roberts' opinions were entitled to more weight; he considered and evaluated each opinion on its own merits and determined that Dr.

Roberts' opinion merited greater weight than did Dr. Cao's opinion. *See Scott v. Berryhill*, No. 16-1440, 2017 WL 2927624, at \*4 (10th Cir. July 10, 2017) (finding that the ALJ properly examined a nonexamining physician's report to see if it outweighed a treating physician's report when "[s]he gave specific, legitimate reasons for rejecting [the treating physician's] opinion, and carefully analyzed [the nonexamining consultant's] opinion and its consistency with the evidence"). Plaintiff fails to demonstrate reversible error.

2. Mental Impairments: Opinions of Dr. Zielinski and Dr. Kahoe

Relevant to Plaintiff's mental functional limitations, Plaintiff challenges the ALJ's consideration of the opinions of treating psychologist Richard Zielinski, MD, and examining consultant Richard Kahoe, PhD.

a. *GAF assessments*

On January 10, 2013, Dr. Kahoe examined Plaintiff. *See* R. 320-26. Among other findings, summarized in the ALJ's discussion, Dr. Kahoe assessed Plaintiff with a GAF score of 50.[4] *See* R. 17, 324.

The ALJ discussed Dr. Kahoe's GAF score as follows:

---

[4] GAF scores represent "a clinician's judgment of the individual's overall level of functioning" at a given time. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th rev. ed. 2000) ("DSM"). The scores are arranged on a 100-point scale, with a score between 41 and 50 indicating "serious symptoms" or "any serious impairment in social, occupational, or school functioning." *Id*. "The most recent edition of the DSM omits the GAF scale 'for several reasons, including its conceptual lack of clarity . . . and questionable psychometrics in routine practice.'" *Richards v. Colvin*, 640 F. App'x 786, 791 (10th Cir. 2016) (quoting Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 16 (5th ed. 2013)).

The undersigned observes that the *DSM-IV* of the American Psychiatric Association states that GAF scores ranging from 51 to 60 indicate moderate symptoms and/or moderate difficulties in social or school function, whereas scores of 50 and below indicate more serious symptoms. Regarding the GAF score in question, the undersigned observes that it is on the "cusp" between what would be considered a rather serious symptomology (according to the DSM-IV) and that of a merely moderate degree. That is, it straddles a fine line between what is generally taken to be sufficient functionality for purposes of gainful employment and what could, presumably, be understood as insufficient functionality. This being so, the undersigned is even more wary of taking the GAF in question as an absolute determination of functioning, especially in any longitudinal sense.

R. 17-18.

Plaintiff argues that the ALJ's evaluation of Dr. Kahoe's GAF assessment was improper because (1) the ALJ's reason for rejecting Dr. Kahoe's GAF score was invalid; and (2) it was inconsistent for the ALJ to reject Dr. Kahoe's GAF assessment while accepting a GAF assessment made by Dr. Zielinski. *See* Pl.'s Br. at 18.

Plaintiff has not shown that the ALJ's reasoning was improper. A single low-to-moderate GAF score does not, "standing alone," "evidence an impairment seriously interfering with claimant's ability to work." *Lopez v. Barnhart*, 78 F. App'x 675, 678 (10th Cir. 2003). And, contrary to Plaintiff's suggestion, the ALJ did not reject Dr. Kahoe's GAF score as altogether irrelevant; rather, he stated that he did not view it "as an *absolute* determination of functioning." R. 17 (emphasis added). Dr. Kahoe's opinion as a whole did not indicate that Plaintiff could not work, and his assessment of a GAF score of 50 "does not undermine, nor is it 'significantly probative' evidence in opposition to, the ALJ's ultimate conclusions concerning the seriousness of [Plaintiff's] mental status or ability to work." *Lopez*, 78 F. App'x at 678 (quoting *Briggs ex rel. Briggs v. Massanari*,

248 F.3d 1235, 1239 (10th Cir. 2001)) (discussing a GAF score assessment of 40); *accord Lee*, 117 F. App'x at 678 (noting that while a GAF score of 50 or less suggests "an inability to keep a job," the claimant's impairment "might lie solely within the social, rather than the occupational, sphere"); *cf. Butler v. Astrue*, 412 F. App'x 144, 146-47 (10th Cir. 2011) ("[B]ecause the GAF scores at issue were not linked to any work-related limitations, they are not particularly helpful."); *Holcomb v. Astrue*, 389 F. App'x 757, 759 (10th Cir. 2010) ("'While a GAF score may be of considerable help to the ALJ in formulating the RFC . . . , it is not essential to the RFC's accuracy' and taken alone does not establish an impairment serious enough to preclude an ability to work." (quoting *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002))). The Court finds no reversible error in the ALJ's consideration of Dr. Kahoe's GAF assessment.

Nor has Plaintiff shown that the ALJ's consideration of Dr. Kahoe's GAF assessment was improper as compared with his consideration of the GAF assessment done by Dr. Zielinski. On March 16, 2014, Dr. Zielinski submitted a Mental Medical Source Statement in which he noted severe and marked limitations. *See* R. 18, 367-70. The ALJ gave "little weight" to Dr. Zielinski's Statement, finding that it was

> inconsistent with the totality of medical evidence of record[,] specifically [Dr. Zielinski's] treatment records . . . , which show an individual who is oriented; has good judgment and insight; normal memory, normal attention/concentration; and normal mood and affect. Furthermore, diagnosis shows depressive disorder, NOS; anxiety disorder, NOS; and a GAF score of 55 (moderate symptoms or difficulty in functioning).

R. 18. Contrary to Plaintiff's argument, the ALJ did not indicate that he was fully crediting Dr. Zielinski's GAF score for its probative value. Rather, he mentioned Dr.

Zielinski's GAF assessment as one of several inconsistencies between the limitations Dr. Zielinski included in the Mental Medical Source Statement and the less-severe limitations indicated by Dr. Zielinski's treatment records—inconsistencies that led him to discount the limitations in Dr. Zielinski's Statement. *See Pisciotta*, 500 F.3d at 1078 ("Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence."); 20 C.F.R. §§ 416.927(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight . . . will [be] give[n] that opinion."); .927(c)(4) ("[T]he more consistent an opinion is with the record as a whole, the more weight . . . will [be] give[n] to that opinion."). The Court finds no reversible error in the ALJ's consideration of Dr. Zielinski's GAF assessment, or in the ALJ's consideration of Dr. Kehoe's GAF assessment in light of the ALJ's treatment of the other physician's GAF score.

### b. *Dr. Zielinski's opinion*

Nor does the undersigned find reversible error in the ALJ's consideration of Dr. Zielinski's opinion as a whole. Plaintiff argues that "it is unclear whether the ALJ's rejection of Dr. Zielinski's opinions was adequately supported by substantial evidence, or whether he applied the correct standards to weigh his opinions." Pl.'s Br. at 18. The Court disagrees.

As an initial matter, although Dr. Zielinski was Plaintiff's treating psychiatrist, any error the ALJ may have made in failing to specify whether he was giving Dr. Zielinski's opinion controlling weight was harmless. In stating that he assigned that opinion "little weight," the ALJ made clear that he did not give it controlling weight. *See Watkins*, 350

F.3d at 1300; *Tarpley v. Colvin*, 601 F. App'x 641, 643-44 (10th Cir. 2015) (finding "any imaginable oversight" to be "clearly harmless" when the ALJ did not expressly say he was not affording treating physicians' opinions controlling weight, but explained that they were entitled to no weight because they were inconsistent with the medical records, and there was substantial evidence to support that decision).

Moreover, an ALJ is not required to mechanically apply all of the prescribed factors in a given case; rather, it is sufficient if the ALJ "provide[s] good reasons in his decision for the weight he [gives] to the treating sources' opinions." *Oldham*, 509 F.3d at 1258; *see* SSR 06-3p, 2006 WL 2329939, at *5 (Aug. 9, 2006) ("Not every factor for weighing opinion evidence will apply in every case."); *see also* discussion of factors at n.3 *supra*. The ALJ's explanation "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Watkins*, 350 F.3d at 1300 (internal quotation marks omitted).

Here, the ALJ's discussion of Dr. Zielinski's opinion focused on two overlapping factors—"the degree to which the physician's opinion is supported by relevant evidence" and "consistency between the opinion and the record as a whole"—both of which are valid reasons for discounting a treating source's opinion. *See id.* at 1301; R. 18. And, as detailed above, the ALJ's decision both made clear the weight he was giving to Dr. Zielinski's opinion and provided "good" reasons for that weight, including "specifically highlighting" portions of the record that were inconsistent with the treating physician's opinion. *See Oldham*, 509 F.3d at 1258; *Hamlin*, 365 F.3d at 1217. As such, the ALJ's

rejection of Dr. Zielinski's opinion was adequately supported by substantial evidence and based upon application of the correct standards.

Plaintiff additionally argues that the ALJ improperly considered Dr. Zielinski's opinion because he did not "weigh [it] with" Dr. Kahoe's opinion and did not discuss "whether the reports from Drs. Zielinski and [Kahoe] supported or contracted each other." Pl.'s Br. at 18. However, the undersigned has found that the ALJ did not err in discounting Dr. Zielinski's opinion based on inconsistency with Dr. Zielinski's own treatment records and lack of consistency with the record overall. And Plaintiff has shown no need for, or prejudice resulting from a lack of, direct comparison between Dr. Zielinski's opinion and Dr. Kahoe's opinion. The burden to show prejudicial error on appeal rests with Plaintiff, and Plaintiff has not met that burden here. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."). The Court finds no reversible error in the ALJ's consideration of Dr. Zielinski's opinion.[5]

---

[5] To the extent Plaintiff is attempting to argue that the ALJ should have examined Dr. Kahoe's (the nontreating physician) opinion to see if it outweighed Dr. Zielinski's (the treating physician) opinion, *see Hamlin*, 365 F.3d at 1215, the Court finds that the ALJ properly did so. *See Scott*, 2017 WL 2927624, at *4 (finding that the ALJ properly examined a nonexamining physician's report vis-à-vis an examining physician's opinion when "[s]he gave specific, legitimate reasons for rejecting [the treating physician's] opinion, and carefully analyzed [the nonexamining consultant's] opinion and its consistency with the evidence"). Alternatively, to the extent Plaintiff is attempting to argue that the ALJ erred because he did not specifically assign weight to Dr. Kahoe's findings, the Court finds the argument unpersuasive. *See Mays v. Colvin*, 739 F.3d 569, 578-79 (10th Cir. 2014) ("[A]n ALJ's failure to weigh a medical opinion involves harmless error if there is no inconsistency between the opinion and the ALJ's assessment of residual functional capacity.").

## B.  *Subjective complaints*

Plaintiff next contends that the ALJ, in evaluating Plaintiff's subjective complaints, erred in relying upon Plaintiff's daily activities and his earnings record.  Pl.'s Br. at 19-22.  Notably, at the time of the ALJ's decision, an ALJ's "credibility" evaluation was governed by Social Security Ruling 96-7p, but on March 16, 2016, the Commissioner issued Social Security Ruling 16-3p, which eliminated use of the term "credibility" and provided new guidance for evaluating the intensity, persistence, and limiting effects of a claimant's symptoms.  *See* SSR 16-3p, 2016 WL 1119029 (eff. Mar. 28, 2016).  Social Security Ruling 16-3p superseded Social Security Ruling 96-7p.  *Id*. at *1.  Plaintiff argues that the new Ruling is applicable to his case, while Defendant disputes the applicability of Social Security Ruling 16-3p and states that it "should not be a factor in the Court's review" because it was not in effect at the time of the ALJ's decision.  Pl.'s Br. at 14-15; Def.'s Br. (Doc. No. 21) at 14.

"Generally, if an agency makes a policy change during the pendency of a claimant's appeal, the reviewing court should remand for the agency to determine whether the new policy affects its prior decision."  *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (internal quotation marks omitted).  However, the Court does not see a meaningful distinction between the two rulings as they relate to this matter.  Because the Court's determination would be the same under either standard, remand is not required for the sole purpose of evaluation under SSR 16-3p.  *See Lee v. Berryhill*, CIV-16-483-R, 2017 WL 2892338, at *4 n.10 (W.D. Okla. June 15, 2017) (R. & R.), *adopted*, 2017 WL 2880862 (W.D. Okla. July 6, 2017).

Both Rulings direct the ALJ to consider an individual's statements about the intensity, persistence, and limiting effects of symptoms. *Compare* SSR 96-7p, 1996 WL 374186, at *1, *with* SSR 16-3p, 2016 WL 1119029, at *4. Both Rulings direct the ALJ to apply the same seven regulatory factors in evaluating the intensity, persistence, and limiting effects of the claimant's symptoms. *Compare* SSR 96-7p, 1996 WL 374186, at *3, *with* SSR 16-3p, 2016 WL 1119029, at *7. And both Rulings direct the ALJ to determine the consistency of the individual's statements as compared to other evidence in the record. *Compare* SSR 96-7p, 1996 WL 374186, at *5-8, *with* SSR 16-3p, 2016 WL 1119029, at *4-10. Although the ALJ's evaluation was phrased in terms of "credibility" and evaluated pursuant to Social Security Ruling 96-7p, *see* R. 15, the ALJ's consideration of Plaintiff's symptoms is consistent with Social Security Ruling 16-3p. *See Mirabal v. Colvin*, No. 1:15-CV-00869-LF, 2016 WL 8230702, at *5 (D.N.M. Dec. 30, 2016) (finding that the ALJ's evaluation of the claim under Social Security Ruling 96-7p was consistent with Social Security Ruling 16-3p).

In considering a claimant's subjective complaints of pain or other symptoms, an ALJ is required to consider all the relevant objective and subjective evidence and "decide whether he believe[d] the claimant's assertions of severe pain." *Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987). In doing so, the ALJ must consider and determine: (1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged (a "loose nexus"); and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's pain was in fact disabling. *Brownrigg v.*

*Berryhill*, 688 F. App'x 542, 545-46 (10th Cir. 2017) (citing *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166-67 (10th Cir. 2012)).  As part of this analysis, the ALJ should consider the following factors:

(i)  Daily activities;

(ii) The location, duration, frequency, and intensity of pain or other symptoms;

(iii)    Precipitating and aggravating factors;

(iv)    The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

(v) Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

(vi)    Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii)    Other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 416.929(c)(3)(i)-(vii); SSR 16-3p, 2016 WL 1119029, at *7; SSR 96-7p, 1996 WL 374186, at *3; *accord Brownrigg*, 688 F. App'x at 545-46 (noting that the factors to consider in the *Luna* analysis are "similar" to those listed in Social Security Ruling 16-3p).

Here, the ALJ recited Plaintiff's testimony that he is "unable to work due to depression, anxiety, rheumatoid arthritis in the knees, COPD, back pain, acid reflux, high blood pressure, and sleep apnea." R. 16.  The ALJ noted Plaintiff's testimony regarding back and knee pain, difficulty holding items and reaching up, and complaints of depression and anxiety.  R. 16.  The ALJ summarized Plaintiff's testimony regarding his activities of daily living.  R. 16.  Upon evaluation, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged

symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in the decision." R. 16. As support for this finding, the ALJ pointed to: (1) Plaintiff's medical records, including the results of x-rays and physical and mental examinations, as well as the effectiveness of medications; (2) Plaintiff's daily activities; and (3) Plaintiff's earnings record. R. 16-19. Plaintiff challenges the ALJ's reliance on two of those grounds.

1. Daily activities

Plaintiff contends that his daily activities do not demonstrate that he is capable of performing full-time work. Pl.'s Br. at 21; *see* 20 C.F.R. § 416.929(c)(3)(i) (stating an ALJ must consider a claimant's daily activities); *Potter v. Sec'y of Health & Human Servs.*, 905 F.2d 1346, 1349 (10th Cir. 1990) (noting the claimant's assertions regarding her limitations were contradicted by evidence of her activities). However, the ALJ reasonably considered Plaintiff's and Plaintiff's brother-in-law's reports that Plaintiff has no problem with personal care, heats leftovers and occasionally prepares his own meals, does laundry and washes dishes, feeds pets, shops in stores, can handle money, and goes to friends' houses and church a few times a week. R. 18-19 (citing R. 188-95, 196-203). Although the record also contains evidence that Plaintiff's daily activities may have been more limited, *see* R. 16 (citing hearing testimony that Plaintiff does not do housework except laundry every two weeks and does not go shopping), it is the ALJ's role and not the Court's to resolve such conflicts in the evidence. *See Allman v. Colvin*, 813 F.3d

1326, 1333 (10th Cir. 2016); *accord Thomas v. Berryhill*, 685 F. App'x 659, 661 (10th Cir. 2017).

While "sporadic performance" of activities, like performing a few household tasks, "does not establish that a person is capable of engaging in substantial gainful activity," *Frey v. Bowen*, 816 F.2d 508, 516-17 (10th Cir. 1987), the Tenth Circuit has consistently held that an ALJ may reasonably consider such activities when they are inconsistent with a claimant's reported limitations. *See, e.g.*, *Welch v. Colvin*, 566 F. App'x 691, 694 (10th Cir. 2014) (claimant able to do light yard work, do light chores, do light cooking, grocery shop, drive, and visit her family); *Wilson v. Astrue*, 602 F.3d 1136, 1146 (10th Cir. 2010) (claimant could care for herself, her home, and her children, and also drive, shop, handle finances, garden, visit friends, and go out to eat); *Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988) (noting that "in determining the credibility of pain testimony" ALJ may consider "the nature of [claimant's] daily activities"); *accord Newbold v. Colvin*, 718 F.3d 1257, 1267 (10th Cir. 2013). Plaintiff has not established that the ALJ erred in relying upon Plaintiff's activities in evaluating Plaintiff's subjective complaints.

2. Earnings record

Plaintiff also contends that it was erroneous for the ALJ to consider his earnings record, arguing that Social Security Ruling 16-3p makes clear that "[e]valuating a claimant's subjective symptoms does not hinge on determining whether the claimant is an honest individual." Pl.'s Br. at 21-22. With respect to Plaintiff's earnings records, the ALJ stated: "The claimant's earnings record do not lend great support to the

claimant's credibility. The claimant alleges disability since November 2012. In 2011, the claimant earned $28,107, but from 2005 through 2010 the claimant had zero earnings. This evidence severely reduces the claimant's credibility." R. 19.

Though Plaintiff is correct that evaluation of subjective symptoms does not depend on whether claimant is honest, it is reasonable for the ALJ to consider evidence of record indicating that Plaintiff stopped working for reasons other than his alleged impairments. *See* SSR 16-3p, 2016 WL 1119029, at *8 ("In determining whether an individual's symptoms will reduce his or her corresponding capacities to perform work-related activities. . . , we will consider the consistency of the individual's own statements. To do so, we will compare statements an individual makes in connection with the individual's claim for disability benefits with any existing statements the individual made under other circumstances."); *see also Potter*, 905 F.2d at 1349 (indicating that a claimant's admission that she did not leave employment as a result of a health-related impairment was relevant to a determination of disability); *Gutierrez v. Colvin*, No. 2:14-CV-00842-PMW, 2016 WL 3683513, at *3 (D. Utah July 6, 2016) (finding that record supported ALJ's adverse credibility finding when it revealed claimant quit working to stay home with a child or because the job was seasonal). The Court finds no reversible error in the ALJ's consideration of Plaintiff's earnings records.

3. Medical records

Plaintiff argues that "the ALJ relied primarily on [Plaintiff's] daily activities and his earnings record." Pl.'s Br. at 19. This argument ignores the ALJ's reliance upon a lack of supporting objective medical evidence. *See Bainbridge v. Colvin*, 618 F. App'x

384, 387 (10th Cir. 2015) (affirming ALJ's finding on claimant's subjective complaints, which was based in part on lack of supporting objective medical evidence).

In the ALJ's review of the intensity, persistence, and limiting effects of Plaintiff's *physical* symptoms, the ALJ noted that Plaintiff "has been doing well with current medications" and that physical examinations with Dr. Cao "show[] range of motion intact, moving all extremities and . . . normal gait." R. 16 (citing R. 411-12, 416-17). The ALJ also noted Dr. Roberts' report that Plaintiff's "impairments appear to be reasonably well-controlled with medical management at this time." R. 16 (citing R. 69). Finally, the ALJ noted that chest x-rays "showed a normal chest" and physical examination "showed good breath sounds." R. 17 (citing R. 424, 426).

Regarding Plaintiff's *mental* symptoms, the ALJ noted that

> Mr. Wagner's personality appears to be best characterized as depressive and anxious[.] Insight into his own psychological functioning and adjustment appears to be fair[.] Judgment with regard to decisions affecting his own well-being is fair. There is no indication that he is not competent to manage his own fiscal affairs.[] Evaluation of cognitive processes indicated that the claimant's attention and concentration skills were moderately impaired. He was oriented for person, place, and time. Assessment of memory functions revealed deficits in short-term memory.

R. 17 (internal quotation marks omitted) (citing R. 321-25). The ALJ noted that Plaintiff stated he "[hadn't] been doing so well" since he ran out of medications four days prior to an appointment (and did not refill his prescriptions because he had an upcoming appointment), but "[o]therwise, [Plaintiff] has no other complaints or side effects." R. 18 (citing R. 348). The ALJ further noted that Plaintiff's treatment records indicated that he

> was well-groomed, oriented to place, person, situation, and time. He demonstrated good mood and affect. His eye contact was good and he

> conversed easily during his appointment. He reported decreased depression
> and anxiety as he has been compliant on his medication. He reported
> coping skills demonstrated in session as friends, family and leisure time.
> He reported social network, library and walking as his outlet.

R. 18 (citing R. 351). Finally, the ALJ considered additional treatment records showing

that Plaintiff was "oriented; has good judgment and insight; normal memory, normal

attention/concentration; and normal mood and affect." R. 18 (citing R. 354-66).

After reviewing Plaintiff's medical records, including the opinions the ALJ

discounted, *see* discussion *supra*, the ALJ concluded that Plaintiff's "alleged severity of

symptoms and limitations are not consistent with the totality of medical evidence of

record." R. 19. The ALJ reasonably relied on the lack of supporting objective medical

evidence to find that Plaintiff's subjective symptoms were not disabling. *See Newbold*,

718 F.3d at 1267-68 (finding that ALJ properly considered whether the claimant's

subjective complaints were consistent with objective medical evidence); *accord, e.g.*,

*Thomas*, 685 F. App'x at 664; *see also* 20 C.F.R. § 416.929(c)(4) ("[ALJ] will consider

[claimant's] statements about the intensity, persistence, and limiting effects of

[claimant's] symptoms, and [ALJ] will evaluate [claimant's] statements in relation to the

objective medical evidence and other evidence, in reaching a conclusion as to whether

[claimant is] disabled.").

In sum, the Court finds that substantial evidence supports the ALJ's evaluation of

Plaintiff's subjective complaints and the correct legal standards were applied. *See Qualls*

*v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000) ("[T]he ALJ did not simply recite the

general factors he considered, he also stated what specific evidence he relied on in

determining that [the claimant's] allegations of disabling pain were not credible."); *cf.* SSR 16-3p, 2016 WL 119029, at *7 ("[I]f an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, we will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities . . . ."). The ALJ articulated sufficient reasoning and relied upon proper factors in determining that, overall, Plaintiff's symptoms did not prohibit him from performing work-related activities.

## CONCLUSION

Based on the foregoing analysis, the decision of the Commissioner is AFFIRMED. Judgment will issue accordingly.

ENTERED this 11th day of September, 2017.

CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE